Misc.]      County Court, Erie County, November, 1910.

EDWARD A. SOUTHALL, Plaintiff, *v.* WILLIAM M. ANTHONY,
      EDITH M. ANTHONY. et. al., Defendants.

(County Court, Erie County, November, 1910.)

Equity — Nature and grounds of jurisdiction — Equality of equities.
Mortgages — Assignments of mortgages — Equities in favor of third
      persons.

    In 1905 defendants were the. owners of certain real estate en-
cumbered by a $2,500 mortgage which, prior to April 24, 1909,
was owned by one H and on said date was past due. In 1907 one
F, an attorney-at-law to whom defendants had assigned a certain
mortgage with directions to sell same, pay the H mortgage and
turn over the balance to defendants, sold the assigned mortgage
for $4,000, but, by means of various statements, managed to keep
the fact as well as the money concealed from defendants until
early in 1909 when he stated to one of them who was importuning
him to pay the H mortgage that it. could not be paid until the
interest day, April 24, 1909, and that her money was well invested
in trust funds. On April 23, 1909, F, as attorney for plaintiff,
obtained from him $2,500 for investment in a good mortgage; on
the same day he deposited a similar amount in a bank and on
the next day he paid the H mortgage by his check on said bank
for $2,562.50. An assignment of said bond and mortgage to plain-
tiff was delivered and duly recorded. Plaintiff turned over all the
papers to F for safe keeping and received from him the first six
months' interest and never saw the papers again until the com-
mencement of an action to foreclose the mortgage. Held, that
the natural inference from the facts was that the mortgage was
purchased with plaintiff's money.

    As between plaintiff and defendants, each being the client of F,
a fully trusted attorney-at-law, they whom he chose to defraud
must suffer the loss unless the faithless attorney can be compelled
to pay.

ACTION to foreclose a mortgage.

Hammond & Hinkley, for plaintiff.

Farrington & Farrington (Frederick Haller, of counsel)
for defendants Anthony.

County Court, Erie County, November, 1910.          [Vol. 69.

Taylor, J. This action is one for the foreclosure of a mortgage. The testimony unfolds a tale of perfidy seldom heard in a court of law. The defendants Anthony, who are now litigating, became the owners of some real estate in this county in April, 1905. This property is encumbered by the $2,500 mortgage in suit, which, prior to April 24, 1909, was owned by Anna Bond Hall and on that date was past due. In 1907 the Anthonys gave to one Fennelly, a lawyer practicing in the city of Buffalo, an assignment in blank of a certain Lunz mortgage, with directions to sell the same as attorney, pay off the above-mentioned Hall mortgage, and turn over the balance to the Anthonys. Fennelly soon sold the Lunz mortgage for $4,000, but by means of various statements, less calculated to adorn the records of veracity than to allay suspicion and postpone an evil day, managed to keep that fact as well as the money concealed from the Anthonys until the early part of the year 1909. Then he stated to Mrs. Anthony, who was often importuning him to pay the Hall mortgage, that it could not be paid until the interest day, on April twenty-fourth, and that her money was well invested " in trust funds." On April 23, 1909, Fennelly, who had been informed by his trusting friend, this plaintiff, that he had some money to invest in a good mortgage, obtained $2,500 from the plaintiff for such an investment. The same day Fennelly deposited in the neighborhood of $2,500 in the Third National Bank, in the city of Buffalo, in his own name. On April twenty-fourth Fennelly gave his own check for $2,562.50 on said bank to the mortgagee Hall, or her husband, and received from the Halls the $2,500 bond and mortgage and an assignment thereof to this plaintiff. This assignment, the bond, mortgage and search were delivered to the plaintiff the next day. The assignment was duly recorded, and soon thereafter all the papers were turned over by the plaintiff to Fennelly for safe keeping. Plaintiff received the first six months' interest from Fennelly and never saw the papers again until this action was commenced. The Anthonys are defending on the ground that the plaintiff is not the true and lawful owner and holder of the bond and mortgage.

So it appears that, on April 24, 1909, Fennelly, having had $4,000 of the Anthonys' money placed in his possession two years before under orders to pay off the Hall mortgage, and also having received $2,500 of the plaintiff's money the day before with orders to invest the same in some good mortgage, did pay off the Hall mortgage, and took an assignment thereof to the plaintiff. Being obligated, as above stated, to both the Anthonys and the plaintiff as attorney and agent, he elected at some time to become faithless to the Anthonys and, being changeful in mood, chose to faithfully perform the work entrusted to him by the plaintiff. What is there in this transaction or in the fact that the plaintiff received the first six months' interest from Fennelly which manifests unfairness, lack of care or diligence in the plaintiff? Is it out of the ordinary course of business for a client to allow his attorney to keep his papers, or collect his interest? It is, to be sure, often the case that a client has investigations made by others than his attorney before investing in a mortgage. But the act of leaving all investigation to the attorney, as in this case, is conduct by no means so unusual as to warrant any inference that the plaintiff was careless of the rights of the Anthonys, who were obligated to pay the mortgage which was being assigned for full value to the plaintiff.

It is the claim of the defendants Anthony that it is as likely that Fennelly was using their money as the plaintiff's to pay off the Hall mortgage, and the claim of the plaintiff is exactly opposite. The true state of affairs as to this is impossible of determination absolutely or otherwise than by inference. Fennelly had obtained the Anthony $4,000 two years before and had not properly accounted for it. He had obtained the plaintiff's $2,500 on April twenty-third, had deposited a similar amount in a local bank on the same day, and on the twenty-fourth had checked out $2,562.50 to pay off the Hall mortgage. Whose money did he use? To be sure, I cannot bring myself to a conclusion entirely free from doubt as to this question; but the natural inference deducible from the facts disclosed, in my judgment, is that the mortgage was purchased with plaintiff's money.

Besides carelessness in the plaintiff, it is urged by defend-

ants, among other points, that the plaintiff in acquiring the bond and mortgage got stolen property, and that the mortgage was paid off with the Anthony money by her agent and therefore became merged. These claims are answered by the statement that I find it to have been the plaintiff's money which was used, that Fennelly was acting for the plaintiff as well as for Mrs. Anthony, and that he took the assignment to the plaintiff as his agent, paying full consideration.

In the matter of the purchase and assignment of this mortgage, the defendants urge that the fraudulent — if not criminal — acts of Fennelly were the acts of his principal, the plaintiff. However, in fact Fennelly was plaintiff's agent merely to do just what he did — namely, to buy a mortgage. He was not deputized to defraud any one. Put the situation in a worse aspect as to the plaintiff, Southall. Suppose, with knowledge that Fennelly had the Anthonys' money for the purpose of paying off the Hall mortgage, Southall had himself paid the Halls full value for the mortgage and taken an assignment to himself. Would that act have been at all in fraud of the Anthonys? Would it have prevented them from paying off the mortgage or impaired any of their rights in the slightest particular? I cannot see that it would. The Anthonys must look to Fennelly for restitution, however dismal the outlook may be.

So it seems to me that, when this transaction was completed, whatever may have been the desire or plans of the Anthonys, the Hall mortgage had become assigned to the plaintiff and not merged, and that the attorney for both the plaintiff and Mrs. Anthony had not only earned title to " the short and ugly word," but had put himself into a position such that he might need to know the meaning of section 1290 of our Penal Law with relation to the Anthony $4,000, not the Hall bond and mortgage.

The defendants urge, too, that Fennelly may have forged some part of the assignment to the plaintiff and that the Halls had knowledge that the Anthonys desired to pay off their mortgage and had furnished Fennelly with the money for that purpose. There is no proof of any forging and whatever the Halls may have done or known cannot be attributed to this plaintiff, or be of any value now to the Anthonys.

The defendants invoke the rule that, where one of two innocent persons must suffer from the fraudulent acts of a third, equity will place the loss upon the person whose acts contributed most to permitting the fraud to be perpetrated. The defendant cites Yoeman v. McClenahan, 190 N. Y. 121, as an authority. As considered relevant to the above rule and to the Yoeman and similar cases, it appears that the Anthonys and the plaintiff each employed Fennelly and entrusted their money to him, and that, when he paid off the Hall mortgage and obtained an assignment to the plaintiff, he was still the agent of Mrs. Anthony and the plaintiff as to two separate transactions. But the plaintiff neither did nor omitted anything which injured the Anthonys, and I find that plaintiff's money was used to buy the Hall mortgage. These parties, in these transactions, acted perhaps not so carefully as a cautious business man would have acted, but I cannot hold Southall to have been fatally incautious, each being the client of a fully trusted attorney. Both were in jeopardy. The one is fortunate enough to escape; the others, whom the faithless attorney chose to defraud, must suffer.

Counsel have cited many cases, touching on various legal principles, some of them helpful to me in disposing of this case. But I fail to find any citation of authority fully in point.

We have here disclosed a melancholy state of affairs, a situation wherein it is clear that neither the plaintiff nor the Anthonys, but Fennelly alone, should be brought to account. Unless he can be compelled to pay, loss must come to the Anthonys, reputable people entirely innocent of wrong. The real culprit so far as I know is at present beyond the reach of the law. To my mind it is simply this: Fennelly either had already appropriated the Anthony $4,000, or, having a choice of victims, he chose the Anthonys. I cannot see it otherwise.

Judgment ordered for the plaintiff for the relief demanded in the complaint, with costs. Charles A. White, referee to sell. Present findings.

Judgment for plaintiff.